**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| APPLIED SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PBC CONSULTING INC. and ARDENT LABS, INC., d/b/a COMULATE,<br><br>Defendants. | ) | Case No. 25-cv-14251<br><br>District Judge Manish S. Shah |

**PLAINTIFF APPLIED SYSTEMS, INC.'S**
**MOTION FOR ENTRY OF PROTECTIVE ORDER**

Applied Systems, Inc. ("Applied") moves under Federal Rule of Civil Procedure 26(c) for entry of its proposed protective order, attached hereto as Exhibit A.[1] The parties have narrowed their disagreements to two access provisions. First, Comulate seeks blanket access to Applied's Attorneys' Eyes Only ("AEO") material for its CEO, Jordan Katz. Second, Comulate opposes identifying experts before they receive AEO material. But the record confirms that neither position is tenable: Comulate has already admitted to deceiving Applied and using its confidential information to develop its products. The Court should protect Applied's sensitive information from competitive use by prohibiting Katz access to AEO materials and requiring Comulate identify its expert designees in advance.[2]

[1] For the Court's convenience, a redline of Applied's proposed protective order against Comulate's proposed protective order is attached as Exhibit B.

[2] Pursuant to Rule 26(c)(1) and Local Rule 37.2, counsel for both parties conferred in good faith on November 12, 2026, at 2:00 p.m. CT by video conference. The parties subsequently exchanged further developed positions via email on November 13, 2026. Despite those efforts, the parties remain unable to resolve the two disputes presented here.

## I. KATZ SHOULD NOT RECEIVE BLANKET ACCESS TO AEO MATERIAL

Katz's business responsibilities and the Court's prior findings warrant denying him blanket AEO access. Rule 26(c)(1)(G) permits restrictions on disclosure of trade secrets and confidential commercial information for good cause. When the risk of competitive harm outweighs the claimed litigation need, access should be restricted. *See Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F. Supp. 3d 936, 944–47 (N.D. Ill. 2017).

The Seventh Circuit has upheld the kind of restriction Applied seeks here. In *Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.*, 784 F.2d 1325 (7th Cir. 1986), the Court of Appeals affirmed an order limiting access to sensitive pricing information to trial counsel who would not also act as business negotiators. *Id.* at 1345–46. The court rejected the competitor's claimed inability to try the case effectively: separate counsel could review and use the information without exposing those who make business decisions. *Id.* The court's overriding concern was the recipient's competitive role and the potential threat to sensitive business information, not whether the information would merely help the competitor's personnel participate in the litigation. *Id.*

Courts in this District apply this same principle. For example, *Silversun* denied an in-house lawyer access to a claimed trade secret because her corporate responsibilities and proximity to decisionmakers created a risk of inadvertent disclosure. 296 F. Supp. 3d at 944–47. *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.* likewise restricted in-house counsel's access despite assurances of compliance, finding an unacceptable disclosure risk and no impairment of the party's ability to litigate through outside counsel. 237 F.R.D. 405, 407–09, 414 (N.D. Ill. 2006).[3] Indeed, the authority Comulate presented in support of its position, *Global*

[3] *Accord Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470–72 (9th Cir. 1992) (affirming denial of access to in-house counsel involved in competitive decisionmaking despite assurances of good faith (citing *U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed. Cir. 1984));

*Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079 (N.D. Ill. 2015), itself upheld Highly Confidential protection for competitively sensitive information.

The risk that Comulate will misuse Applied's commercially sensitive information is clear. In granting Applied's preliminary injunction, due to ***Jordan Katz's own admissions***, the Court found that Comulate used information obtained through a contractual breach to develop a product competing directly with Applied Recon, threatening irreparable harm. Dkt. 81 at 13–14. The Court also found likely violations of contractual access restrictions because Comulate provided access and confidential information to users who were not authorized under the agreements. *Id.* at 9. In the related action, the Court described Comulate's business fallout on the preliminary-injunction record as "a product of Comulate and Mr. Katz's own misdeeds." May 14, 2026 Hr'g Tr. 4:8–12, No. 26-cv-591. The Court should not require Applied to share sensitive business information with a competitor who has already admitted to taking Applied's information and using it to develop his own products.

Comulate's own pleading confirms Katz's personal involvement in commercial activities, including product demonstrations, acquisitions, and strategic partnerships. Dkt. 114, Countercls. ¶¶ 88, 93, 118, 156. Even a competitor with the most sincere intentions of abiding by the Court's

---

*Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1202–03 (10th Cir. 2014) (rejecting individual defendant's due-process challenge to an AEO restriction on a report he sought to review to assist counsel); *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 500–02 (W.D. Va. 2014) (rejecting proposed blanket access for company principals despite their asserted need to assist counsel and evaluate the litigation); *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555–56 (C.D. Cal. 2007) (rejecting company president's asserted need to review competitor's customer and supplier information to direct counsel and litigation strategy); *Sioux Pharm, Inc. v. Eagle Lab'ys, Inc.*, 865 N.W.2d 528, 541–42 (Iowa 2015) (reversing order permitting accused competitor access to claimed trade secrets: "A party uncertain whether its trade secret was stolen should not have to reveal the secret to the thief to find out").

restrictions could allow nonpublic commercial information to inform its business decisions. *See Silversun*, 296 F. Supp. 3d at 947.

Jordan Katz is not entitled to obtain through discovery the very highly sensitive information he attempted to obtain, or did obtain, through fraud. Nor can Comulate circumvent that restriction simply by designating Katz as an expert, which would not erase his longstanding commercial role or diminish the resulting risk of competitive misuse. Applied's proposed ¶ 5(d) is thus a necessary protection to prevent Katz and other unqualified party personnel from obtaining AEO access merely by serving as "experts." Comulate's outside counsel and qualified independent experts are more than capable of reviewing those documents and preparing Comulate's defenses. These safeguards permit Comulate to litigate while protecting Applied from competitive harm; a blanket exception for Katz would defeat that protection.

## II. EXPERTS SHOULD BE IDENTIFIED BEFORE RECEIVING AEO MATERIAL

Requiring expert disclosure prior to receipt of AEO materials is also necessary to safeguard confidentiality. Absent prior identification, other safeguards could be circumvented. Comulate could designate Jordan Katz, or another individual who has a substantial influence over Comulate's business dealings, as an expert and show them Applied's AEO materials, all without Applied's knowledge. Prior disclosure adds little burden to the parties and provides both with reassurance that they know precisely who is viewing their most sensitive materials.

Decisions from this District support Applied's proposed safeguard. In *International Equipment Trading Ltd. v. Illumina, Inc.*, the court required advance identification and an opportunity to object before experts received Highly Confidential information. 2019 WL 6173416, at *2 (N.D. Ill. Nov. 20, 2019). The procedure allowed concrete concerns to be addressed before disclosure, while treating disclosure to independent experts as presumptively

valid. *Id.* at *3. This venerable principle was explained in *Davis v. General Motors Corporation*, 64 F.R.D. 420, 422 (N.D. Ill. 1974), where the court limited sensitive technical discovery to trial counsel and court-approved independent experts or consultants.

Specifically, *Saso Golf, Inc. v. Nike, Inc.* illustrates the importance of advanced notice. Under an agreed notice-and-objection procedure, disclosure of the proposed expert's identity enabled Nike to investigate his work for competitors. The court then restricted the expert's access to native engineering files while permitting access to other materials. 2009 WL 3242112, at *1–4 (N.D. Ill. Oct. 5, 2009). Identification allowed a tailored decision about access without barring the party from retaining its chosen expert.

These procedures are both "commonplace" and well established in federal courts addressing comparable issues. *See Ibrahim v. Department of Homeland Security*, 669 F.3d 983, 999 (9th Cir. 2012) (rejecting a Rule 26 objection to disclosure of nontestifying experts' identities and endorsing the district court's explanation that expert vetting to protect trade secrets and other sensitive information is "commonplace"); *J.R. Simplot Co. v. McCain Foods USA, Inc.*, 2019 WL 2745730, at *11 (D. Idaho July 1, 2019) (requiring identification of experts receiving AEO information over Rule 26 and work-product objections); *Containment Techs. Grp., Inc. v. Am. Soc'y of Health Sys. Pharmacists*, 2008 WL 4545310, at *6 (S.D. Ind. Oct. 10, 2008) (requiring prompt disclosure of signed undertakings because the producing party was "entitled to at least know who is receiving such information").

Applied's proposal follows this standard approach. Before sharing AEO material with an expert, a party must identify the expert and provide a signed undertaking to comply with the order. This process allows the producing party to assess competitive conflicts before its information is disclosed. It does not require early reports, disclosure of opinions, or a commitment to call the

expert at trial. The requirement applies to both parties and gives neither a veto over expert selection. It is merely notice. After-the-fact disclosure cannot un-ring the bell. A producing party would have no meaningful recourse if the receiving party designates an inappropriate or interested expert.

Given the competitive use of Applied's information already shown in this record, advance identification is warranted.

## III. CONCLUSION

For the foregoing reasons, Applied respectfully requests the Court enter Applied's protective order.

Dated: November 13, 2026

Respectfully submitted,

*/s/ Sam S. Stake*

Jonathan C. Bunge (Ill. Bar # 6202603)
Nathan Hamstra (Ill. Bar # 6286325)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1101 N. Wacker Dr., Suite 2700
Chicago, IL 60606
(312) 705-7400
jonathanbunge@quinnemanuel.com
nathanhamstra@quinnemanuel.com

Sam S. Stake (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111-4624
(415) 875-6600
samstake@quinnemanuel.com

Aaron H. Perahia (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street
Los Angeles, California 90017
(213) 443-3000
aaronperahia@quinnemanuel.com

Sami H. Rashid (admitted *pro hac vice*)
Salvadore J. Diaz (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000
samirashid@quinnemanuel.com
salvadorediaz@quinnemanuel.com

*Attorneys for Plaintiff Applied Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2026, I filed the foregoing document with the United States District Court for the Northern District of Illinois using the CM/ECF system and caused it to be served on all registered participants via the notice of electronic filing.

*/s/ Sam S. Stake*
Sam S. Stake