**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| APPLIED SYSTEMS, INC.,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>PBC CONSULTING INC., Defendant, and ARDENT LABS, INC., d/b/a COMULATE,<br><br>Defendant and Counterclaim-Plaintiff. | Case No. 1:25-cv-14251<br><br>Honorable Manish S. Shah<br>Magistrate Judge Maria Valdez |

**MOTION FOR ENTRY OF PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c) and this Court's Minute Entries of October 20, 2026 (Dkt. 111) and November 9, 2026 (Dkt. 123), Defendant and Counterclaim-Plaintiff Ardent Labs, Inc., d/b/a Comulate ("Comulate"), by and through its undersigned counsel, respectfully moves the Court for the entry of a Confidentiality Order. Pursuant to the Court's October 20 and November 9 Minute Entries, Comulate is submitting a copy of Comulate's Proposed Confidentiality Order (attached hereto as Exhibit A) to the Court's proposed order inbox: proposed_order_shah@ilnd.uscourts.gov.

Comulate and Plaintiff and Counterclaim-Defendant Applied Systems, Inc. ("Applied") have agreed to most provisions of a Confidentiality Order, but have been unable to reach consensus on two discrete issues. First, Comulate seeks to have two party designees view Highly Confidential, non-source code material in order to meaningfully assist in Comulate's defense against Applied's claims and prosecute Comulate's own claims. Second, Comulate does not agree with Applied's proposed requirement that a party must disclose its Consultants and Experts in advance in order to view any non-source code Protected Material, which would require the early

identification of expert witnesses and consultants before the deadlines prescribed in the Court's orders and applicable Federal Rules. Attached as Exhibit B is a comparison between Comulate's proposed Confidentiality Order and Applied's version, with redlines showing the disputed provisions.

For the following reasons, Comulate respectfully requests that the Court enter Comulate's proposed Confidentiality Order.

## ARGUMENT

Comulate's business has suffered catastrophic harm due to Applied's anticompetitive actions. Comulate has lost the bulk of its team, and this litigation – both in prosecuting Comulate's claims, and in defending against Applied's claims – is vital to Comulate's ability to remain in business. It therefore is essential that Comulate's remaining officers can meaningfully participate in and oversee this litigation by assisting outside counsel in reviewing and understanding information designated Highly Confidential. Accordingly, Comulate has proposed a reasonable approach that other courts have adopted that would allow two pre-identified party representatives from each side to view non-source code material designated as Highly Confidential. The subject of this litigation is highly technical, and Comulate expects a substantial amount of material will be designated Highly Confidential. Comulate does not employ in-house counsel. The two party officers Comulate seeks to designate to review such material—CEO Jordan Katz and CTO Matthew Mattheakis—are the primary remaining personnel that possess the factual knowledge to explain and engage with Comulate's outside counsel regarding the anticipated Highly Confidential material. Without that assistance, Comulate's ability to defend itself against Applied's claims and prosecute its own claims will be prejudiced.

Comulate also opposes Applied's insertion of language in the requirements for Consultants and Experts that effectively would require the early identification of expert witnesses and consultants before the deadlines prescribed in the Court's orders and applicable Federal Rules.

## I. The Court Should Allow Two Party Designees to View Highly Confidential, Non-Source Code Material

The Court should accept Comulate's reasonable two-party-designee approach to allow Comulate personnel to participate meaningfully in Comulate's defense and prosecution of this action.

*First*, Comulate's approach aligns with – and is even *more* protective than – this District's Model Confidentiality Order. *See* Form LR 26.2 (Northern District of Illinois Model Confidentiality Order). The Model Order contemplates that individual parties and employees of a party will be able to review, *e.g.*, "information that reveals trade secrets." Form LR 26.2 at ¶ 2. And, according to ¶ 5(b) of the Model Order, "[i]ndividual parties and employees of a party" are permitted to review such Confidential information "to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation." *See* Form LR 26.2 at ¶ 5(b)(2). The Model Order *does not* contemplate any higher designations for Highly Confidential, Attorneys' Eyes Only, or Source Code material at all.

Accordingly, the three-tiered designation protocol the parties have agreed to here (Confidential, Highly Confidential, and Source Code material, *see* Ex. A Protective Order at ¶ 2) is already *more* restrictive than the Model Order. Comulate's proposed approach of allowing two identified party designees to view Highly Confidential, non-source code information would remain more stringent and protective than the Model Order. Moreover, Comulate's proposed Confidentiality Order operates in conjunction with the parties' agreed Source Code Protocol – submitted to the Court today – under which the parties' most competitively sensitive information

would still be restricted to attorneys and pre-cleared experts. *See* Ex. C Source Code Protocol. The safeguards of the Source Code Protocol and Comulate's two-designee approach to Highly Confidential non-source code material thus appropriately balance the parties' interests in protecting sensitive business information with the parties' needs to review information necessary to prosecute and defend their claims, while remaining close to this District's Model Order. *See Parungao v. Cmty. Health Sys., Inc.*, 2015 WL 7195909, at *3 (N.D. Ill. Nov. 16, 2015) ("The Model Confidentiality Order should be the starting point from which the parties should negotiate and discuss what material shall be designated confidential or highly confidential and entitled to greater protection.").

*Second*, Comulate has a compelling need to have two party representatives be able to review Highly Confidential, non-source code material. Comulate's business has been catastrophically harmed due to Applied's anticompetitive actions. *See* Katz Decl. at ¶ 9. As a result, [redacted], and this litigation – both in prosecuting Comulate's claims, and in defending against Applied's claims – is vital to Comulate's ability to remain in business. *See id.* at ¶¶ 9, 13. Further, Comulate does not employ in-house counsel. *See id.* at ¶ 12. It is therefore essential that Comulate's remaining officers have the ability to meaningfully participate in and oversee this litigation. *See id.* at ¶ 14.

Comulate has proposed its co-founder and Chief Executive Officer, Jordan Katz, and co-founder and Chief Technology Officer, Michael Mattheakis, as its two identified party designees.[1] Mr. Katz and Mr. Mattheakis are the primary Comulate personnel who possess the preexisting factual knowledge central to Comulate's claims and defenses in this matter. *See id.* at ¶¶ 6, 21.

[1] Applied has not identified who it would designate as its two party representatives if the Court enters Comulate's Protective Order.

Moreover, Mr. Mattheakis, Comulate's CTO, is the only remaining Comulate personnel who can explain and engage with Comulate's outside counsel regarding any complicated technical information designated Highly Confidential. *See id.* at ¶ 21.

Due to the technical nature of this lawsuit's subject matter, Comulate expects that both parties will designate a substantial amount of documents and information as Highly Confidential under the Protective Order. *See id.* at ¶ 18. For example, Applied has already designated its responses to even basic interrogatories as Highly Confidential – Attorneys' Eyes Only, which is an ongoing dispute between the parties because Comulate does not currently know what it is being accused of misappropriating. *See id.* at ¶ 19. Therefore, if access to the bulk of the information likely to be produced in this lawsuit is designated Highly Confidential without two party designees able to review the information, it will be detrimental to Comulate's ability to defend itself against Applied's claims and prosecute its own claims. *See id.* at ¶ 22. *See Motorola, Inc. v. Lemko Corp*., 2010 WL 2179170, at *3-5 (N.D. Ill. June 1, 2010) (court entered protective order that allowed disclosure of highly confidential materials to "designated non-lawyer representative[s]" of each party because "there is a legitimate need for [a party's] outside counsel to be able to consult with client representatives other than lawyers").

Because Comulate employs no in-house counsel, Mr. Katz and Mr. Mattheakis are the only Comulate personnel able to participate in and oversee this essential litigation. *See* Katz Decl. at ¶ 14. And for the efficient use of Comulate's remaining resources, it is important that Mr. Katz and Mr. Mattheakis can do so, rather than relying on outside experts. *See id.* at ¶ 15. Further, outside counsel and experts cannot fully replace Mr. Katz and Mr. Mattheakis's input into this litigation at any cost, because they have no firsthand knowledge of how Comulate's product was built – which is the core of Applied's claims. *See id.* at ¶ 16.

*Third*, there is no significant risk of inadvertent disclosure and competitive harm to Applied if Mr. Katz and Mr. Mattheakis are allowed to review Highly Confidential, non-source code information for the sole purpose of assisting with the litigation. Mr. Katz and Mr. Mattheakis understand that they will be subject to the Confidentiality Order's Acknowledgment and Agreement To Be Bound, which provides that designated information may be used solely for purposes of prosecuting, defending, or attempting to settle the parties' litigation, and that violations may result in penalties for contempt of court. *See id.* at ¶ 24; *Motorola, Inc.*, 2010 WL 2179170, at *3-5 (there was no "appreciable risk" of harm from disclosure by party designees because "personnel that would have access to the information all would be required to execute a sworn undertaking not to disclose the information to others and to use it only in connection with assisting counsel").

Mr. Katz and Mr. Mattheakis also have complied with Comulate's confidentiality and use obligations under the Court's February 11, 2026 Order (Dkt. 82) and are not currently using Applied's information. *See* Katz Decl. at ¶ 26. Nor will Mr. Katz and Mr. Mattheakis use any Applied information that is disclosed through the future production of Highly Confidential Information in this litigation. *Id.*

Moreover, if Applied's accusations were true (they are not), Comulate would already have access to the alleged trade secrets, so a designation of any alleged trade secret material as no higher than "Confidential" would be sufficient. *See Integrity Sols., Inc. v. MCS Consulting, Inc.*, 2025 WL 1207597, at *3 (D. Colo. Apr. 25, 2025) ("[T]o the extent Plaintiff is correct—that Defendants already have access to and are deploying the alleged trade secrets—then an AEO designation provides little help. Maintaining the information as 'CONFIDENTIAL' and making clear that any

confidential information should not be used for any purpose other than this litigation, should provide sufficient protection.").

Instead, Mr. Katz and Mr. Mattheakis have an even greater interest in viewing Highly Confidential, non-source code material *because* this is a trade secrets matter. As courts in this District have recognized, a party has a "substantial interest in being able to view" Highly Confidential Information where that material "goes to the heart" of a trade secrets case. *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, Ltd., 133 F. Supp. 3d 1079, 1090 (N.D. Ill. 2015); *see Kraft Foods Glob., Inc. v. Dairilean, Inc.*, 2011 WL 1557881, at *1-3 (N.D. Ill. Apr. 25, 2011) (party's founder and sole employee allowed to view Highly Confidential Information for use in trade secret expert report because otherwise "its defense of this case will be significantly hindered"). Indeed, a defendant in a trade secrets case has a right to know what it is being accused of misappropriating, as a matter of fairness and due process. *See Integrity Sols., Inc.*, 2025 WL 1207597, at *3 (barring defendants from viewing the disclosure of the alleged trade secrets was "both unfair and impractical" because "[i]t is important for the fairness of the process that Defendants know exactly what it is that they have been accused of stealing").

These principles are heightened even more when the trade secrets at issue are highly technical and complex. Outside counsel does not serve as an adequate substitute for the technical knowledge and expertise in the complex software that a party's designees would have. *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maintenance, Inc.*, 863 F. Supp. 2d 1066, 1091-92 (D. Colo. 2012) (party's current employee could serve as designee and view attorneys' eyes only material given technical expertise and factual knowledge). Permitting two party designees to review the material at issue is important here for the efficient use of Comulate's remaining resources. *See* Katz Decl. ¶ 15; *see also Multi-State P'ship for Prevention, LLC v. Kennedy*, 2024 WL 5146067,

at *4 (E.D.N.Y. Dec. 17, 2024) (defendant accused of trade secret misappropriation permitted to view highly confidential material because case may "turn[] on [his] personal knowledge of specific pieces of confidential information," defendant was "uniquely able to efficiently and expeditiously determine whether copying occurred").

*Fourth*, Comulate's proposed two-party-designee approach also protects the parties against the risk of the over-designation of Highly Confidential Information. *See Defazio v. Hollister, Inc.*, 2007 WL 2580633, at *2 (E.D. Cal. Sept. 5, 2007) (party could view attorneys' eyes only materials with safeguards because "this is not a case where the clients have no real, meaningful input to make into tactical decisions, or where their input would not be helpful in determining the bona fides of the information submitted" and "the very real specter of over-designation of 'attorneys' eyes only' information exists, and plaintiffs should not be put in a position where they are essentially kept in the dark about the important facts of the case"). As mentioned, that risk has already borne out in this litigation, as Applied has designated even its initial discovery responses as attorneys' eyes only. Granting this motion will moot that dispute and avoid burdening the Court with other, similar disputes in the future.

*Fifth*, Applied's cited cases do not change this conclusion. In each case that Applied cites, excluding the challenged individuals from viewing the material did not result in excluding the entire party from participating in its defense. *See, e.g., Silversun Industries, Inc. v. PPG Industries, Inc.*, 296 F. Supp. 3d 936, 938 (N.D. Ill. 2017) (rejecting defendant's asserted need for in-house counsel to review plaintiff's trade based on finding that the ability to assist outside counsel would not be impaired); *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 409–13 (N.D. Ill. 2006) (categorizing decision to restrict in-house counsel's access as

"truly singular," and noting lack of "proof that restricting its in-house counsels' access will impair its ability to prosecute its claims or defend").

Other caselaw Applied cites is inapposite. In *Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.*, the Court had affirmed restrictions on *outside counse*l's access to financially sensitive information, *not* any of the company's principals or anyone who was implicated in the alleged misconduct. *See* 784 F.2d 1325, 1346 (7th Cir. 1986).[2] In *EpicentRx, Inc. v. Carter*, the court adopted an attorneys' eyes only designation when the former CEO would still be allowed to access some AEO documents via a carveout. *See* No. 20-cv-1058, Dkt. 49 at 4–7 (S.D. Cal. Sept. 30, 2020). And in *Sioux Pharm, Inc. v. Eagle Laboratories, Inc.*, the court reversed and vacated an order permitting access to alleged trade secrets because the lower court had not applied the correct legal standard for balancing the parties' needs. *See* 865 N.W.2d 528, 541–42 (Iowa 2015).

*Finally*, Comulate did not invent its two-party-designee approach out of whole cloth. This District has taken the exact same approach in previous cases. *In Engineering and Software System Solutions, Inc. v. Gianluca Cusatis, et al.*, No. 1:23−cv−00676 (Dkt. 53), Judge Blakey entered a confidentiality order allowing two party designees from each side to view attorneys' eyes only documents (over Plaintiff's objections). The court wrote:

> The parties have filed competing confidentiality order motions, see [49], [51], because they are unable to agree on one issue. The parties have agreed that any confidentiality order must include an "attorneys' eyes only" designation, and they have further agreed that Defendant Cusatis and one person from ES3 may also view attorneys' eyes only documents. The sticking point is that Defendants also want to grant access to Matthew Troemner, one of Cusatis' co−owners. Plaintiff has balked at having to expand the scope of disclosure to yet another competitor. But Plaintiff sued Cusatis' company as well as Cusatis individually, making Troemner

[2] Applied's remaining cases rest on case-by-case determinations and are distinguishable – they either conclude that there is no proof of impairment to the case or determined that the requesting person had no offsetting need to view the documents.

> effectively a party. Indeed, Defendants argue that counsel "needs to be able to freely discuss the merits of the case and the evidence adduced with both owners counsel also argues that, of the two, Troemner apparently has more time to commit to assisting with the defense, which will help keep the case on track. Accordingly, the Court grants Defendants' motion [49] and denies Plaintiff's motion [51]. The Court declines to enter Defendants' proposed confidentiality order at this time, however, and instead orders the parties to meet and confer on whether, in light of the Court's ruling, Plaintiff wishes to designate a second person to access "attorneys' eyes only" materials (as the parties' previously discussed).

In sum, Comulate has proposed a reasonable and precedented approach that would allow two pre-identified party representatives from each side to view non-source code material designated as Highly Confidential. Comulate would be extremely prejudiced if its party designees cannot engage with and oversee this highly technical litigation.

## II. The Court Should Not Require Early Identification of Consultants and Experts to View Protected Material

Applied has refused to agree to the Confidentiality Order unless Comulate discloses the identity of any expert witnesses or consultants before the expert is allowed to view *any* Protected Material – whether that material is Highly Confidential information or even simply Confidential information. *See* Ex. B ¶ 5(b)(6) (redline showing Applied's proposal that Comulate opposes). In the stipulated Source Code Protocol, the parties already agreed that a party that seeks to disclose to an expert information designated as Source Code Material must identify the expert and provide a signed Acknowledgement and Agreement To Be Bound. *See* Ex. C Source Code Protocol ¶ 2.4. But Applied seeks to impose that requirement for all other Protected Material. Since this litigation involves technical subject matter, and a large amount of material will be designated at least Confidential, Applied's proposal would require the identification of any and all expert witnesses and consultants long before the applicable deadline for identification of experts prescribed by the scheduling order or Federal Rules.

Importantly, Applied's new requirement does not derive from the Northern District of Illinois's Model Confidentiality Order. *See* Form LR 26.2. The Model Order instead tracks Comulate's proposed Confidentiality Order word-for-word. *Compare* Ex. A Protective Order at ¶ 5(b)(6) *with* Form LR 26.2 at ¶ 5(b)(6).

Comulate's model language relating to consultants and experts already requires those individuals to sign the Acknowledgment of Agreement to Be Bound by the Confidentiality Order before reviewing Protected Material. That requirement is a sufficient protection against the unknown harm Applied speculates if Applied does not receive the immediate identification of Comulate's consultants and experts before those individuals can advise Comulate at all.

Contrary to Applied's proposal, the Federal Rules of Civil Procedure never require consultants and experts a party does not intend to call at trial to be identified. *See* Fed. R. Civ. P. 26(b)(4)(D) (parties cannot "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial" absent "exceptional circumstances"). Nor can parties "require the other party to name experts" who are "informally consulted." Fed. R. Civ. P. 26 advisory committee's note (1970). The reason for this is straightforward: when a lawyer chooses to consult with an expert and decides against calling her as a witness, that decision "implicates values that the work-product doctrine was designed to protect." *Hays v. Edwards Lifesciences, LLC*, 2008 WL 11520418, at *3 (N.D. Ill. June 4, 2008). It is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). "A lawyer's decision about which people to use in confidence for which purposes in preparing a case for trial is as central to lawyering strategy as one can get." *Hays*, 2008 WL 11520418, at *3 (quoting *In re Pizza Time Theater Sec. Litig.*, 113 F.R.D. 94, 98 (N.D. Cal. 1986)).

Applied's proposal requiring parties to identify its experts early, before a trial and before any decision as to whether an expert should testify, violates these principles and would lead to needless litigation over objections to potential experts. When a narrower path for protection is presented, as it is here, courts have rejected the overbroad approach that Applied has proposed. For example, this Court previously rejected a protective order provision that would require plaintiffs' counsel to disclose the identities of any nontestifying experts before the experts could receive Highly Confidential information about the defendant's trade secrets. *See Hays*, 2008 WL 11520418, at *3. And other courts have held the same. *See Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 252 (D. Kan. 2010) ("[T]he Court rejects Defendant's proposed protective order provision requiring the parties to disclose the identity of the consultant or expert prior to whom they intend to disclose of confidential information. The Court, however, will modify paragraph 5(a)(iii) of Defendant's proposed protective order to require all experts and consultants to sign the Acknowledgment and Agreement . . . ."); *Cox Operating, LLC v. ATINA, M/V*, 2021 WL 5405259, at *5 (E.D. La. Oct. 1, 2021) ("The objection that a potential expert cannot 'unring the bell' and will inevitably use the information produced in this case to the competitive disadvantage of Claimant in the future is not the proper standard. To hold otherwise would essentially allow a litigant veto power of the other party's active industry consultant in any highly technical field and ignore that party's need to engage the expert most beneficial to its case. Nor will the court assume that an expert will defy the Protective Order's restriction precluding the use of the documents for any purpose whatsoever other than this litigation.").

The authority Applied has identified does not help its position. The lead case Applied cites, *International Equipment Trading, Ltd. v. Illumina, Inc.*, 2019 WL 6173416 (N.D. Ill. Nov. 20, 2019), involved preclearance of a "party expert"—a principal of the company—not "*outside* expert

disclosure." *Id.* at *2. But Applied's proposal would apply to all experts. And in *Saso Golf, Inc. v. Nike, Inc.*, 2009 WL 3242112 (N.D. Ill. Oct. 5, 2009), unlike here, the court applied a preclearance provision to which the parties "ha[d] agreed." *Id.* at *1. Applied's proposed language as drafted also applies to all non-source code Protected Material Comulate would need to share with potential consultants and experts – even basic "Confidential" information. Therefore, Applied's citations to cases involving, *e.g.*, national security concerns, are inapposite. *See Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 998-99 (9th Cir. 2012) (addressing statutory requirement to subject potential experts to security screening in order to receive Sensitive Security Information).

In short, there are no "exceptional circumstances" requiring the identification or early identification of consultants and experts who need to view Confidential or Highly Confidential non-source code material to assist Comulate and its attorneys in preparing in Comulate's case. Fed. R. Civ. P. 26(b)(4)(D). The protections already afforded in the parties' agreed Source Code Protocol and Acknowledgment of Agreement to Be Bound by the Confidentiality Order are commonplace and more than sufficient to protect the materials Applied designates as Confidential and Highly Confidential in this litigation. Comulate must be allowed to mount its claims and defenses without disclosing its experts early.

## CONCLUSION

Comulate respectfully requests that this Court enter the proposed Confidentiality Order attached hereto as Exhibit A.

Respectfully submitted,

Dated: November 13, 2026

/s/ *Michael N. Nemelka*

Michael N. Nemelka (*pro hac vice*)
Aaron M. Panner (*pro hac vice*)
Derek T. Ho (Bar No. 488609)
Lillian V. Smith (*pro hac vice*)
Daniel S. Severson (*pro hac vice*)
Stephanie E. Levin (Bar No. 90002577)
Michael C. McCue (*pro hac vice*)
Ella S. Chochrek (*pro hac vice*)
Justin D. Cole* (*pro hac vice*)
Ivy Truong (*pro hac vice*)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, PLLC
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
mnemelka@kellogghansen.com
apanner@kellogghansen.com
dho@kellogghansen.com
lsmith@kellogghansen.com
dseverson@kellogghansen.com
slevin@kellogghansen.com
mmccue@kellogghansen.com
echochrek@kellogghansen.com
jcole@kellogghansen.com
itruong@kellogghansen.com

Zachary Freeman
Brian Kerwin
MILLER SHAKMAN LEVINE &
FELDMAN LLP
30 West Monroe Street, Suite 1900
Chicago, IL 60603
(312) 263-3700
zfreeman@millershakman.com
bkerwin@millershakman.com

*Attorneys for Defendant and Counterclaim-Plaintiff Ardent Labs, Inc., d/b/a Comulate*

* Not admitted in the District of Columbia; practicing under the supervision of members of the Firm.

## LOCAL RULE 37.2 CERTIFICATION

The undersigned attorney for Comulate certifies the following statement in accordance with Local Rule 37.2:

1. After multiple email exchanges from October 23, 2026 through November 11, 2026, undersigned counsel had a telephonic meet and confer with counsel for Applied on November 12, 2026.

2. During the meet and confer, counsel for the parties were able to come to agreement on many terms regarding the Protective Order but, as confirmed through email exchanges on November 13, 2026, reached impasse on the aforementioned sections of the Protective Order that Comulate now moves to enter.

*/s/ Daniel S. Severson*
Attorney for Defendant and
Counterclaim-Plaintiff Ardent Labs,
Inc., d/b/a Comulate

# CERTIFICATE OF SERVICE

I hereby certify that, on November 13, 2026, I caused the foregoing document to be filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Michael N. Nemelka*
Michael N. Nemelka